HARRY B. WOLF et al. *v.* AUGUST J. OLDENBURG.
[No. 50, October Term, 1927.]

354

*Decided January 20th, 1928.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

*Arthur R. Padgett,* with whom was *Charles Jackson* on the brief, for the appellants.

*Frank F. Luthardt,* with whom was *H. Courtenay Jenifer* on the brief, for the appellee.

Adkins, J., delivered the opinion of the Court.

The bill of complaint in this case alleged that on September 22nd, 1924, the plaintiff, by agreement duly recorded, purchased from the Brighton Bay Corporation, (which, with Harry B. Wolf and Sarah C. Wolf, his wife, were the defendants) five lots of land in Baltimore County numbered 21, 22, 23, 24, and 25 in Block E on the plat of said corporation, recorded among the plat records of said county, said lots having a frontage on Chesapeake Bay Drive of 125 feet, for the price of $5,000, of which $400 was paid in cash, and the balance was to be paid in monthly instalments of $75, commencing on November 1st, 1924; and four lots, two fronting 50 feet on Cecil Avenue at the northeast corner of Cecil Avenue and Bay Shore Boulevard, and two fronting 50 feet on the northeast side of Cecil Avenue adjoining the property of Bay Shore Park, for the price of $3,100, of which $300 was paid in cash and the balance was to be paid in equal monthly instalments of $35, commencing on November 1st, 1924; that plaintiff has made all payments as required by said agreements, the entire amount paid being $3,080; that, at the time of said purchase, the whole tract, of which said nine lots so purchased are a part, was encumbered with a mortgage dated June 6th, 1924, and duly recorded from the said Brighton Bay Corporation to the said Harry B. Wolf and Sarah C. Wolf, his wife, to secure the payment of $275,000, in five years from the date thereof, with interest at the rate of six per cent., with the right to the mortgagor to a partial release of each acre lot of the mortgaged property upon the payment on account of the principal of the sum of $2,000 for each acre shore lot, and $1,000 for each acre inland lot, provided the interest payments are not in arrear; that on or about October 13th, 1925, at a time when the interest payments provided by said mortgage were not in arrear, plaintiff through his counsel by letter tendered to the said Brighton Bay Corporation, and the said Harry B. Wolf and wife, the sum of $2,000 for and on account of the purchase price of the first mentioned five lots and for a partial release of the aforesaid mortgage, a form of partial release

being submitted with said letter; that although said five lots are what are known as shore lots and constitute thirty-five hundredths of an acre, and although plaintiff was then and there ready, able, and willing to pay to the said Brighton Bay Corporation and the said Harry B. Wolf and Sarah C. Wolf, his wife, the sum of $2,000, as aforesaid, and has been ready, able and willing to pay said sum ever since the time of the tender thereof as aforesaid, the said Brighton Bay Corporation and the said Harry B. Wolf and Sarah C. Wolf, his wife, did not tender to plaintiff or his counsel the aforesaid release of mortgage properly executed to be delivered upon the payment of said $2,000; that the other four lots are known as inland lots and constitute about twenty-six hundredths of an acre, and plaintiff was ready, able and willing, before the interest payments on said mortgage became in arrear, and ever since, to pay the sum of $1,000 to said Brighton Bay Corporation and the said Harry B. Wolf and wife on account of the purchase price thereof and for a partial release of said mortgage; that said mortgagees have advertised the mortgaged property for sale under the power contained in the mortgage, and if permitted to sell the lots so purchased by plaintiff, his interest in said lots will be wiped out and destroyed; and plaintiff will suffer irreparable damage and loss. The prayer of the bill is for an injunction to restrain the sale of said nine lots, and for further relief.

The tender alleged in the bill was in the following letter:

"2 E. Lexington St.,
October 13,1925.

"Brighton Bay Corporation,
"104-106 N. Liberty Street, and
"Mr. and Mrs. Harry B. Wolf,
"110 E. Lexington Street,
"Baltimore, Md.

"Dear Sirs and Madam:

"Mr. August J. Oldenburg has handed me his check for $2,000.00 which he has instructed me to tender you for and on account of the purchase price of lots Nos. 21, 22, 23, 24 and 25, in Block 'E', Ferry Pier Sec-

tion, Brighton Beach, and for a release of the mortgage dated June 6, 1924, Liber W. P. C. No. 688, folio 67, covering the same, in form of that enclosed.

"Yours very truly,

"FFL—K.          (Signed) Frank F. Luthardt."

The defendants Harry B. Wolf and Sarah C. Wolf demurred to the bill, and the court passed an order overruling the demurrer and granting a perpetual injunction restraining the mortgagees from selling said nine lots upon the plaintiff's paying into said court the sum of $3,000 with interest from November 1st, 1926. This appeal is from that order.

Appellants' contentions are: (1) That the mortgagor could not have obtained an injunction restraining the sale of part of the mortgaged property by paying part of the debt, and that the purchaser of the lots in question is in no better position to demand it; (2) that the plaintiff had no title; (3) that the bill is multifarious in joining the Brighton Bay Corporation as a party defendant with Harry B. Wolf and wife; (4) that the chancellor erred in not requiring plaintiff to file a bond.

The answer to the first proposition is that the mortgage expressly provided that the mortgagor would be entitled to the release of any acre lot on paying, if a shore lot, $2,000, and, if an inland lot, $1,000, provided the interest payments were not in arrear.

The second objection is settled against the contention of appellant by *Wingert v. Brewer,* 116 Md. 518. It is there said: "It would be useless to contract for the purchase of property upon which there is a mortgage, if the vendee be not entitled to redeem it, and a denial of that right might enable a vendor who afterward became dissatisfied with the bargain to avoid it, if he can induce the mortgagee to foreclose." See also *Kent Building & Loan Co. v. Middleton,* 112 Md. 10.

The third objection was set out as one of the grounds of demurrer, but is not mentioned in appellant's brief. The point was not well taken. See *Wingert v. Brewer, supra.*

The fourth objection is more serious. It was said in *Thrift v. Bannon,* 111 Md. 303: "Neither did the petitioner comply with section 18 of article 66 (of the Code) by filing an approved bond for the protection of the assignee in case the injunction should subsequently be dissolved. Ordinarily, without these provisions being first complied with, no injunction to restrain the sale of the mortgaged premises could properly be granted." See also *Wingert v. Brewer, supra.*

The learned chancellor, therefore, erred in granting the injunction and excluding from the sale the lots in question, without requiring a bond to be filed. But as to the five shore lots this objection has now lost its force, in view of the permanent injunction, if the case was in fact submitted for final decree. *Green v. Redmond,* 132 Md. 166, 171. It does not appear from the record that the case was submitted for final decree. If there was in fact no such final submission, it was reversible error to grant a permanent injunction without giving the defendants an opportunity to answer.

Except for this error the decree would be affirmed as to the five shore lots. As to the four inland lots, the decree must be reversed for two other reasons: (1) It is not alleged in the bill that said four lots are contained within a single acre. We do not think the privilege of redeeming one acre lots gave the right to select a number of small lots not contiguous and thus make up a total of one acre. (2) There is no allegation of a tender as to these lots. The mere ability and willingness to comply with the condition is not sufficient, in the absence of a tender, or at least of a *bona fide* effort to make a tender, which was prevented by the fault of the mortgagee, as in *Wingert v. Brewer, supra.*

As to these four lots the injunction should not have been granted on the allegations of the bill, even with a protecting bond.

The decree will therefore be reversed without prejudice, and the case remanded, so that the defendant may have opportunity to answer, if, in fact, the case was not submitted for final decree, the injunction to stand as to the five shore

lots if the case was submitted for final decree; and so that the plaintiff may ask leave to amend his bill of complaint if he desires to do so as to said four inland lots, or file a new bill as to said four lots.

> *Decree reversed without prejudice, and cause remanded for further proceedings in accordance with the views above expressed, each side to pay half the costs.*

PARKE, J., filed the following separate opinion.

The opinion of the court holds that sections 16-18 of article 66 of the Code apply to the cause at bar; but in the judgment of the writer the instant cause is not within these sections, which are designed to stay the foreclosure of a mortgage because of either a specified form of fraud in its inception, or of its satisfaction by payment, or of a refusal to give credit for any sum paid on account of the mortgage indebtedness. The statute contemplates a proceeding in which the mortgagor, or some one claiming under him, on the one part, and the mortgagee, his personal representatives or assigns, on the other part, are arrayed against one another in a controversy growing out of one of the three stated grounds of relief, and so the statute does not apply to a purchaser from the mortgagor of a part of the mortgaged property that was sold pursuant to a stipulation of both mortgagor and mortgagee, found in the deed itself, that the mortgagor would have the right "to a partial release of each acre lot of the mortgaged property upon payment on account of the principal of the sum of two thousand dollars ($2,000.00) for each acre shore lot, and one thousand dollars ($1,000.00) for each acre inland lot, provided the interest payments are not in arrears." The mortgage is not set out in the record, but the nature of this provision is a covenant running with the land. Upon the payment or tender of the price agreed, when interest payments are not in arrear, the mortgagor or

his vendee is entitled to a release, and, if this be declined, to secure a release by specific performance, and an injunction to stay foreclosure of that part of the land so bought by the vendee. The pending proceedings may be supported on this theory. *Jones on Mortgages* (7th Ed.), sec. 981, pp. 588, 589; *id.,* sec. 79, p. 91; *Clark v. Fontain,* 144 Mass. 287; *Neale v. Dempster,* 179 Pa. St. 569.